IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER ADAMS, #328180, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:23-cv-00823 <br> ) Judge Trauger |
| CORECIVIC OF TENNESSEE, LLC, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Christopher Adams, an inmate of the Trousdale Turner Correctional Center (TTCC) proceeding pro se, has filed a verified civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1, "the Complaint") and paid the filing fee.

The case is before the court for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**I. INITIAL REVIEW**

**A. Legal Standard**

The court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Review for whether the Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson*

*v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

The plaintiff filed this action under § 1983, which authorizes a federal suit against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983.

**B. Allegations and Claims**

The plaintiff has been incarcerated at TTCC since October 2021. (Doc. No. 1 at 12.) He sues the following defendants in charge of operating (or overseeing the operation of) TTCC: CoreCivic of Tennessee, LLC ("CoreCivic"); CoreCivic's CEO, Damon Hininger; CoreCivic's Vice President of Operations Administration, Steve Conry; TTCC Warden Vincent Vantell; TTCC Classification Coordinator Tari Crawford; Trousdale County, Tennessee; the Tennessee Department of Correction (TDOC); and the Commissioner of TDOC, Frank Strada. (*Id.* at 7–10.)

Across fifty pages, the Complaint alleges in painstaking detail the dangerousness of the living conditions at TTCC due to rampant violence between inmates. It claims that the problem is caused by CoreCivic's intentional understaffing of the facility to increase its profit margin. The Complaint asserts that this cause and its effects are well known to the defendants; to other state officials including the Tennessee Comptroller of the Treasury, who published a report in 2020 confirming the results of a 2017 audit that identified significant problems at CoreCivic-managed facilities and largely attributed them to understaffing; and to this court and the news-consuming public. (*See id.* at 3–7 & n.8 (citing over 30 news articles published between 2016 and 2023).) The core claim of the Complaint is summarized as follows:

2

> Since beginning its operations of the TTCC CoreCivic has continued to fail in its constitutional duty to provide reasonable safety to the inmates in its care thereby exhibiting deliberate indifference to the same. All of the problems that plague the TTCC are attributable to understaffing. The TTCC is unable to provide inmate services that promote positive behavior such as, recreation, education, programming, religious services, adequate grievance procedures, adequate legal and leisure library access, adequate mail service, etc. because of understaffing. The lack of correctional services due to the understaffing results in the idleness of inmates, which in turn, has led to excessive violence resulting in constant lockdowns further exacerbating the violence. For 2023, the TTCC has been on lockdown, or what is the equivalent of lockdown, for over 125 days further adding fuel to the fire, and therefore, Plaintiff's plight. As such, CoreCivic's understaffing policy creates a dangerous and volatile environment based on the totality of the conditions resulting from it.

(*Id.* at 4–6.)

As far as the impact of these conditions on Plaintiff, he alleges that his unit houses 512 inmates divided into four "open-bay barracks style" pods of 128 inmates. (*Id.* at 13.) Guards are not posted inside the pods; only one or two guards are assigned to the entire unit, and "they rarely do security walk-thrus in Plaintiff's pod." (*Id.* at 14.) When TTCC is audited or inspected, CoreCivic employs temporary officers who are usually gone after the audit or inspection is concluded. (*Id.*) CoreCivic has continued to staff TTCC with one or two guards per unit despite the high incidence of violence, including the recent deaths of several inmates. (*Id.* at 15.) Fights between inmates in the pods are allowed to carry on without a response from the guards, and guards routinely let inmates into pods where they do not reside. (*Id.* at 23–24, 27.) The plaintiff's unit (Whiskey Unit) is for "minimum-restricted custody" inmates, "but correction officials knowingly house more dangerous, volatile medium custody inmates therein" (*id.* at 32), exacerbating the risk to inmate safety in a unit that is already understaffed by guards and at times completely unguarded. (*Id.* at 15, 32.) The plaintiff thus lives in fear for his personal safety. (*Id.* at 27.)

As highlighted in the summary above, the plaintiff and other TTCC inmates are rarely allowed to have recreation or to attend educational classes, the library, rehabilitative programs, or

3

religious services because of understaffing and the attendant violence requiring prison lockdowns. (*Id.* at 31.) The Complaint was received in this court 219 days into 2023, and TTCC had been on lockdown for 125 of those days. (*Id.*) The plaintiff alleges that these issues "demonstrate that CoreCivic and its employees adopt and enforce a corporate policy of understaffing to maximize profits," leading to "assaults, deaths, murders, rapes, and extortion." (*Id.* at 39.) He claims that the defendants' policies and actions/inaction related to staffing issues amount to deliberate indifference to his safety in violation of the Eighth Amendment (*id.* at 39–46), resulting in "constant anxiety, tension, and uncertainty for Plaintiff as to when the volatile environment is going to explode." (*Id.* at 41.)

The Complaint seeks declaratory and injunctive relief largely directed toward remedying the dangerous conditions at TTCC that it claims, in Count 1, violate the plaintiff's Eighth Amendment rights. (*Id.* at 50–51.) It also seeks an award of punitive damages against CoreCivic. (*Id.* at 50.) Finally, in Count 2, the Complaint claims a right to declaratory and injunctive relief against TDOC and Trousdale County under Tenn. Code Ann. § 1-3-121 and Art. 1, § 32 of the Tennessee Constitution. (*Id.* at 46–49.)

**C. Analysis**

Violence among prison inmates has proven to be an intractable problem, as "[p]risons are by definition places where violent people are housed involuntarily." *McGhee v. Foltz*, 852 F.2d 876, 880 (6th Cir. 1988). An inmate who "has suffered or is threatened with suffering actual harm" as a result of such violent conditions of confinement may establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishments, *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998), upon "evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and that the defendants had reason to know of the risk yet failed to respond reasonably to address it.

4

*Farmer v. Brennan*, 511 U.S. 825, 842–45 (1994) (internal quotation marks omitted); *see also Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) ("[A] prison inmate first must show that the failure to protect from risk of harm is objectively 'sufficiently serious,'" and "also must show that prison officials acted with 'deliberate indifference' to inmate health or safety."). For a corporate defendant such as CoreCivic—which is a state actor by virtue of performing the traditional state function of operating a prison, *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)—liability under § 1983 must be grounded in a causal relationship between the execution of a corporate policy or custom and the substantial risk the plaintiff faces. *See*, *e.g.*, *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014).

      As a threshold matter, because the plaintiff does not allege that he has suffered any physical injury or been personally threatened with the same, the court must examine his standing to challenge the misconduct alleged here. To establish standing to sue, the plaintiff must present an injury-in-fact—that is, a "concrete, particularized, and actual or imminent" injury—that is "fairly traceable to the challenged action[] and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)). At the pleading stage, the plaintiff must make clear allegations demonstrating each of the above elements. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). For these purposes, where an alleged injury has not occurred but is threatened, its occurrence must be imminent, meaning that the injury must be "certainly impending"—"allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citations and internal quotation marks omitted); *see also Hugueley v. Haslam*, No. 3:16-cv-02885, 2017 WL 194288, at *4 (M.D. Tenn. Jan. 18, 2017) (dismissing complaint at initial screening because, *inter alia*, death row inmate lacked standing based on allegation that he "could possibly or potentially be threatened or harmed by [other] death row inmates as a result of

5

the security issues" arising from lax operation of the death row unit at prison, where violence was allegedly a daily threat).

The Complaint in this case does not allege that the plaintiff has been the victim of any attack or that he has suffered, or been directly threatened with, the infliction of any physical injury. But neither does it allege or seek to recover for mere fear of possible future physical harm. Rather, it seeks prospective, injunctive relief from conditions that are causing the plaintiff current, significant emotional distress as well as the loss of rights and privileges (due to prison lockdowns) that he would otherwise enjoy. Whether or not these claims ultimately succeed, for purposes of initial review at the pleading stage, the court finds the Complaint's allegations sufficient to meet the plaintiff's burden of establishing standing based on an injury-in-fact that is fairly traceable to the defendants' actions and redressable by a favorable ruling. *See Buchholz*, 946 F.3d at 864 (recognizing that injury-in-fact may be established by "emotional distresses . . . accompanied by corroborating allegations that established more than bare anxiety" about future harm).

1. Count One: § 1983 Claim for Violation of the Eighth Amendment

As the plaintiff notes (Doc. No. 1 at 40), a claim for prospective relief "need not await a tragic event," *Helling v. McKinney*, 509 U.S. 25, 33 (1993), but may be granted when prison officials violate the Eighth Amendment by their deliberate indifference to "prison conditions fostering unconstitutional threats of harm to inmates." *Wilson*, 148 F.3d at 601. For purposes of initial review, the court finds that the Complaint alleges sufficient facts to support a plausible claim to injunctive relief based on deliberate indifference to the risk posed by CoreCivic's policy of understaffing TTCC. It is reasonable to infer from the Complaint's allegations that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," *Farmer*, 511 U.S. at 842, and that CoreCivic and defendants Hininger, Conry, and Vantell (sued in their individual capacities (*see* Doc. No. 1 at 8–9)), as well as TDOC

6

Commissioner Strada (sued in his official capacity (*see id.* at 10)),[1] had reason to know of the longstanding risks created by the policy of understaffing TTCC allegedly to maximize corporate profits, yet failed to respond reasonably to address such risks.

The Eighth Amendment may also be violated in cases where "frequent or protracted lockdowns" create inhumane conditions. *Miller v. Winnebago Cnty. Sheriff's Off.*, No. 18 C 50334, 2019 WL 184078, at *3 (N.D. Ill. Jan. 14, 2019) (citing *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013) (finding that inmate's complaint alleging "frequent lockdowns for substantial periods of time [that] deprived him of exercise and caused him various health issues" should have survived § 1915A screening; deeming "multiple grievances from inmates" and "numerous past lawsuits" concerning the conditions at issue sufficient to support plausible claim of deliberate indifference)). Plaintiff alleges that, over the span of 219 days in 2023, TTCC was locked down more days than it was not, in order to alleviate security concerns resulting from understaffing. The resulting deprivation of opportunities for recreation, religious and rehabilitative services and programs, and library access supports, for purposes of initial review, a plausible claim that the plaintiff's conditions of confinement were unconstitutional.

This case will proceed against CoreCivic, Hininger, Conry, Vantell, and Strada for further development of the plaintiff's Eighth Amendment claim for injunctive relief.

---

[1] Although a suit against a state official in his official capacity is tantamount to a suit against the state itself, and the State of Tennessee is generally immune from suit in federal court under the Eleventh Amendment, the Eleventh Amendment does not bar claims against a state when, *inter alia*, "the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). *Ex Parte Young* allows suits for prospective injunctive relief against state officials sued in their official capacities for violations of federal law, *see id.* at 412; *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013)—as Strada is here. In that capacity, Strada is properly held to answer for TDOC's alleged failures in sending its inmates to endure known risks to their safety at TTCC (*see* Doc. No. 1 at 33–35), and to implement any injunctive order that may ultimately issue against the State. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

However, TTCC Classification Coordinator Tari Crawford will be dismissed from this action. The only allegation against her in the Complaint is that she denied the plaintiff's request to be classified for transfer to a different prison due to safety concerns at TTCC. (Doc. No. 1 at 35–36, 46.) Prison inmates do not have a constitutional right to placement in any particular security classification, housing assignment, or prison. *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002); *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). The Complaint therefore fails to state a plausible § 1983 claim against Crawford.

The § 1983 claim against Trousdale County must also be dismissed. As stated by Judge Richardson in *Wildbur v. Trousdale Cnty. Comm'r*, No. 3:21-CV-00212, 2021 WL 1405480 (M.D. Tenn. Apr. 14, 2021):

> Trousdale County, like CoreCivic, can be liable under Section 1983 based only on an allegation that "a municipal policy or custom directly caused" a constitutional violation. *Hardrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)). But Plaintiff does not allege that Trousdale County has control over the day-to-day operations of Trousdale Turner Correctional Center, and the County cannot be liable for the policy or custom of CoreCivic. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (citations omitted) (noting the distinction between a policy or custom of a municipality, and a policy or custom of a private contractor).

*Id.* at *4. Here, the Complaint alleges that Trousdale County has contracted with TDOC to provide for a prison, TTCC, to be operated in that county (Doc. No. 1 at 41; Doc. No. 1-20); has failed to perform under that contract by ensuring that its subcontractor, CoreCivic, provides adequate staff at TTCC (Doc. No. 1 at 45, 48); and "has acquiesced and tolerated CoreCivic's unconstitutional policy just as though it were its own." (*Id.* at 48). The Complaint does *not* allege that Trousdale County has any control over the day-to-day operation of TTCC, or that any Trousdale County policy is the direct cause of allegedly profit-driven understaffing at TTCC—and municipal liability under § 1983 cannot be based on a policy that, as here, is at best a "but for" cause of the alleged harm rather than the direct cause or "moving force" behind it. *Hardrick*, 876 F.3d at 243; *Miller*

*v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010); *see also Waller v. City of Fort Worth Texas*, 515 F. Supp. 3d 577, 585 (N.D. Tex. 2021), *aff'd sub nom. Waller v. Hoeppner*, No. 21-10129, 2022 WL 4494111 (5th Cir. Sept. 27, 2022) (dismissing municipal liability claim where municipal policies were "but for" causes that merely "set the stage" for constitutional deprivation, rather than the "moving force" behind it). In short, because the moving force behind the claimed Eighth Amendment violation is CoreCivic's policy of understaffing TTCC, not any policy of Trousdale County, the Complaint fails to state a plausible § 1983 claim against Trousdale County.

2. Count Two: Supplemental State Law Claims Against Trousdale County and TDOC

The plaintiff sues TDOC under § 1-3-121 of the Tennessee Code[2] and asserts that it "has a legal duty under the Eighth Amendment of the United States Constitution and Tennessee Constitution Article I § 32 to provide Plaintiff with a reasonably safe prison to serve his term of incarceration," which it has failed to do. (Doc. No. 1 at 46–49.) However, TDOC is immune from suit in federal court. The Eleventh Amendment bars suits in federal court against states and state agencies, including TDOC. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012). Exceptions to the Eleventh Amendment bar arise only "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young* . . . applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). The State of Tennessee has not waived its immunity with respect to claims under § 1983 or had that immunity abrogated by Congress. *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*, 63 F.4th 510, 518 (6th Cir. 2023). Nor does § 1-3-121 waive the

---

[2] This statute, enacted in 2018, merely provides that, "[n]otwithstanding any law to the contrary, a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action. A cause of action shall not exist under this chapter to seek damages." Tenn. Code Ann. § 1-3-121.

State's immunity to suit in federal court, but only to suit in Tennessee state court. *Fox v. Faison*, No. 3:22-CV-00691, --- F. Supp. 3d ----, 2023 WL 2763130, at *11 (M.D. Tenn. Apr. 3, 2023).

As to *Ex Parte Young*, the doctrine it announced does not apply to authorize claims against a state agency, but only claims to enjoin a state official in his or her official capacity to follow federal law. *See Hudson v. CoreCivic*, No. 3:21-CV-00319, 2023 WL 1093895, at *5 (M.D. Tenn. Jan. 6, 2023), *report and recommendation adopted sub nom. Hudson v. CoreCivic, Inc.*, No. 3:21-CV-00319, 2023 WL 2242316 (M.D. Tenn. Feb. 27, 2023). As discussed above, Commissioner Strada is already properly named a defendant for this purpose. But "because the purposes of *Ex parte Young* do not apply to a lawsuit designed to bring a State into compliance with *state* law," all state-law claims filed against a State (or an arm thereof) in federal court are barred by the Eleventh Amendment, regardless of "whether those claims are monetary or injunctive in nature." *Fox*, 2023 WL 2763130, at *11 (quoting *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005)) (emphasis added). TDOC will therefore be dismissed from this action.

While Trousdale County is not immune under the Eleventh Amendment, it does generally enjoy sovereign immunity as a matter of state law, *see Harakas Constr., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 561 S.W.3d 910, 924 (Tenn. Ct. App. 2018) (quoting *Comm'rs of Union City*, 196 Tenn. 274, 265 S.W.2d 563, 565 (1954)) (noting that, "[i]n the context of sovereign immunity, '[t]he State' includes . . . municipalities of the State")—though not from suit for declaratory or injunctive relief from an illegal or unconstitutional "governmental action." Tenn. Code Ann. § 1-3-121. The plaintiff's Count Two claim against Trousdale County is asserted under § 1-3-121. It claims that Trousdale County breached duties owed under the contract with TDOC when it failed to fulfill its promise to oversee CoreCivic's operation of TTCC, and when it impliedly acquiesced in CoreCivic's known policy of understaffing TTCC by renewing its contract with CoreCivic in 2021, leading to a violation of the Tennessee Constitution's requirement that

10

"the humane treatment of prisoners[] shall be provided for." (Doc. No. 1 at 46, 48.) The plaintiff thus claims that "Trousdale County is contractually and lawfully liable for the acts and omissions of CoreCivic." (*Id.* at 48.)

The court assumes for purposes of initial review that Count Two challenges Trousdale County's "governmental action" under Tenn. Code Ann. § 1-3-121, and that sovereign immunity is therefore waived. *See Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, 645 S.W.3d 160, 169 (Tenn. 2022) (holding that § 1-2-121 "waives sovereign immunity for causes of action seeking 'declaratory or injunctive relief . . . regarding the legality or constitutionality of a governmental action'"). However, to the extent that the plaintiff is seeking to enforce a duty arising from the contract between TDOC and Trousdale County (Doc. No. 1-20), he may only do so if he was an intended third-party beneficiary to that contract. *See Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 899 (Tenn. 2016).

To state a plausible claim as a third-party beneficiary, a plaintiff must allege facts that (1) reflect the existence of a contract that recognized a right to performance in him when it was executed, and (2) demonstrate that such performance will either discharge a duty owed to the plaintiff or fulfill the promisee's intent to benefit the plaintiff. *J.S. Haren Co. v. City of Cleveland*, No. E2002-01327-COA-R3CV, 2003 WL 21276662, at *5 (Tenn. Ct. App. May 30, 2003) (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 70 (Tenn. 2001)). A complaint that does not make "*factual* allegations . . . [but] only conclusory statements bearing on [these] factors . . . is not enough." *Id.* (emphasis in original).

Because the Complaint in this case does not include factual allegations to support the plaintiff's status as an intended third-party beneficiary to the contract he cites, but only conclusory assertions that the contracting parties are under a legal duty to all TTCC inmates not to tolerate CoreCivic's policy of understaffing TTCC, this claim against Trousdale County will be dismissed.

11

*Cf. United States ex rel. Smith v. Peters*, No. 2:14-CV-01982-SU, 2018 WL 4441520, at *15 (D. Or. May 3, 2018), *report and recommendation adopted sub nom. United States v. Smith*, No. 2:14-CV-01982-SU, 2018 WL 4409378 (D. Or. Sept. 14, 2018) (allegation that prisoner-plaintiffs, "and all inmates, are 'third-party beneficiaries of' the contracts" for provision of mailing supplies to prison "is a legal conclusion not entitled to the presumption of truth"); *see also Claritt v. Correct Care Sols.*, No. CV 3:20-0544, 2022 WL 282911, at *4 (M.D. Pa. Jan. 31, 2022) (dismissing inmate's breach-of-contract claim because of insufficient factual allegations to show "that there was an express contractual intent to make him a third-party beneficiary of the relevant contract"); *Ferguson v. Corizon Health, Inc.*, No. 1:21-CV-00338-DCN, 2022 WL 60586, at *8 (D. Idaho Jan. 5, 2022) (same); *Farris v. Stepp*, No. 20-CV-02346-DDD-NYW, 2021 WL 5200210, at *5 (D. Colo. Nov. 9, 2021) (same); *Pagliaroli v. Ahsan*, No. CV 18-9683 (BRM), 2019 WL 979244, at *4 (D.N.J. Feb. 28, 2019) (same). The dismissal will be without prejudice to the plaintiff's ability to refile a claim under § 1-3-121 and the Tennessee Constitution in state court.

## II. CONCLUSION

As explained above, the plaintiff states a nonfrivolous Eighth Amendment claim against CoreCivic, against defendants Hininger, Conry, and Vantell in their individual capacities, and against defendant Strada in his official capacity. This claim survives initial review and may proceed for further development.

The docket does not show that the plaintiff has presented summonses to the Clerk for signature and seal or has secured any defendant's waiver of service of a summons. *See* Fed. R. Civ. P. 4(b), (d). Accordingly, the Clerk is **DIRECTED** to issue summonses for each of the five defendants named above (as they are identified in the Complaint) to the plaintiff for service on the defendants.

It is the plaintiff's responsibility to ensure that each defendant is served with a summons and a copy of the Complaint. Fed. R. Civ. P. 4(c)(1). Under Rule 4(m), the plaintiff generally has 90 days to complete such service, but he may request additional time if he shows "good cause." Fed. R. Civ. P. 4(m). The plaintiff may also request that service be made by the United States Marshal, upon payment of a fee. Fed. R. Civ. P. 4(c)(3).

Defendants Crawford, TDOC, and Trousdale County are **DISMISSED** from this action. The state law claim against TDOC and Trousdale County is **DISMISSED WITHOUT PREJUDICE** to the plaintiff's ability to refile in state court.

The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge